Maureen A. BRANKER, Plaintiff,

v.

PFIZER, INC., William C. Steers,
Jr., et al., Defendants.

No. 96 Civ. 9223(RWS).

United States District Court,
S.D. New York.

Nov. 12, 1997.

W. Randolph Kraft, Jersey City, NJ, for Plaintiff.

Epstein Becker & Green, P.C., New York City (Philip M. Berkowitz, of counsel), for Defendants.

## OPINION

SWEET, *District Judge.*

Defendants Pfizer, Inc. ("Pfizer") and William C. Steere Jr. ("Steere") have moved for summary judgment in this action brought by plaintiff Maureen Branker ("Branker"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–5 et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8–502, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.* For the reasons set forth below, the motion for summary judgment will be granted.

### Parties

Pfizer is a Delaware corporation doing business in New York.

Branker is an African–American woman, whose date of birth is September 30, 1949. She was employed at Pfizer from 1979 until 1995.

### Prior Proceedings

In this action, Branker alleges that Pfizer failed to promote her to the position of financial analyst and terminated her in 1995 as a result of her age and race. On December 11, 1996, Branker filed the complaint in this action, asserting violations of Title VII, the ADEA, the NYCHRL, and the NYSHRL. In her complaint, Branker also claimed intentional infliction of emotional distress based on the fraudulent inducement of her signature on the release, and on assertions that the CEO of Pfizer, Steere, "misrepresented to her that he would investigate her claims and offer assistance to her." At oral argument, Branker's counsel elaborated that Branker met with Steere and the General Counsel of Pfizer after her termination to discuss possible discrimination against her. According to Branker' s counsel, Steere promised to investigate her allegations and to provide Branker with assistance in her new venture, a restaurant, but instead commenced an investigation of Branker.

On June 4, 1997, Pfizer filed the instant motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Argument was heard on September 3, 1997, on which date Branker's counsel faxed opposition papers to the Court. On September 11, 1997, Pfizer filed its reply papers, and the motion was then deemed fully submitted.

### Facts

Branker began her employment at Pfizer as a secretary in its Pharmaceutical/Controllers Department. She rose through promotion to the position of senior financial associate. In 1993, Branker began reporting to Helen Lang, who had become Controller and then Director of Finance in the U.S. Pharmaceutical Group. At the same time, Branker's main responsibility, reconciliation of monthly

expenses, was reduced by the introduction of a sophisticated computer system.

In June 1994, Branker received a performance appraisal from Lang which rated her performance as satisfactory, but expressed a concern regarding her communication skills and insufficient knowledge of the use of a new computer system. Branker indicated her strong disagreement with Lang's view of her performance, and submitted further facts related to her accomplishments and her intention to take computer courses in 1994.

In 1995, Lang delivered a performance review which rated Branker's work as less than satisfactory, and expressed concerns with Branker's failure to plan and set priorities, and her failure to increase an understanding of the needs of the new organization. Branker again submitted a rebuttal and suggested alterations to the account of her work performance.

In 1995, the U.S. pharmaceuticals group of Pfizer was restructured by the merging of the three different divisions into one. Supervisors of each division reviewed the functions of their organizations in order to reduce staffing. On or about April 24, 1995, Branker met with Lang and Len Stephens, the Director of Human Resources for the U.S. Pharmaceutical Group. Lang and Stephens informed Branker that, due to the reorganization, Lang had to reduce her staff and that Branker's position was being eliminated. They also told Branker that she would have forty-five days before termination, and gave her a form releasing all claims arising out of her employment or termination. She was told to review the release over the forty-five day period. Stephens advised Branker that she did not have to sign the release if she did not want to, and that she would receive a separation package regardless of whether she signed the release. Stephens also advised Branker to seek the advice of counsel prior to signing the release. After consultation with an attorney, Branker signed the release form on June 8, 1995. Signing the release increased Branker's severance package from $32,800.77 to $68,891.91. The release form provided that she could revoke its execution within seven days of signing, which she did not do.

According to Pfizer, every employee who has held the position of financial analyst has had an MBA, which Branker lacks. Pfizer also identifies two other African–American women who have held the position of financial analyst, both of whom had MBAs.

### Discussion

Summary judgment is appropriate where no genuine issue of material fact exists, and the undisputed facts establish the movant's right to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Rodriguez v. City of New York*, 72 F.3d 1051, 1060 (2d Cir.1995). In deciding a motion for summary judgment, the court is not expected to resolve disputed issues of fact, *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987), but to determine whether there are any factual issues which require a trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The court must view the evidence in the light most favorable to the non-moving party. *O'Brien v. National Gypsum Co.*, 944 F.2d 69, 72 (2d Cir.1991). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1355. This is particularly true when the issue is one on which the opponent of summary judgment would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

Pfizer has moved for summary judgment on the following grounds: (1) Branker's Title VII, ADEA, NYCHRL and NYSHRL claims are barred because she failed to exhaust her administrative remedies, as required by these statutes; (2) Branker's action is barred because she knowingly and voluntarily signed the release of all claims; (3) Branker cannot establish a *prima facie* case of discrimination; (4) Branker's Title VII and ADEA action as against Steere must be dismissed because he cannot be held individually liable on such claims; (5) Branker fails to state a

claim of intentional infliction of emotional distress.[1]

*Branker Failed to Exhaust her Administrative Remedies as Required to Bring Suit Under Title VII, the ADEA and the NYCHRL*

■ Branker does not contradict Pfizer's contention that she commenced this action without filing a complaint regarding her Title VII and ADEA claims before the Equal Employment Opportunity Commission ("EEOC"). Under both statutes, such a filing and receipt of a right-to-sue letter from the agency are necessary prerequisites to bringing a legal action. Title VII, 42 U.S.C. §§ 2000e–5(e)(1), (f)(1); ADEA, 29 U.S.C. § 626(d). Failure to do so. is sufficient ground for dismissal of the action:

A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge. This exhaustion requirement is an essential element of Title VII's statutory scheme. As we noted ... with respect to an analogous EEOC charge requirement in the Age Discrimination in Employment Act, the purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC.

*Butts v. City of New York Department of Housing Preservation and Development,* 990 F.2d 1397, 1401 (1993) (quoting *Miller v. International Tel. & Tel.,* 755 F.2d 20, 26 (2d Cir.1985)) (quotation marks and other citations omitted); *Dillman v. Combustion Eng'g. Inc.,* 784 F.2d 57, 59 (2d Cir.1986) (ADEA claims dismissed on summary judgment for failure to file timely charge with EEOC); *Hogan v. 50 Sutton Place South Owners, Inc.,* 919 F.Supp. 738, 746 (S.D.N.Y.

1996) (dismissing Title VII claim for failure to file complaint with EEOC).

■ Similarly, Section 8–502(c) of the New York City Administrative Code requires that "[p]rior to commencing a civil action ... the plaintiff shall serve a copy of the complaint upon the city commission on human rights and corporation counsel." While a plaintiff is not required to file her complaint with the city commission, she must serve a copy of the complaint upon the city commission and on the corporation counsel. Failure to comply with this requirement is grounds for dismissal of Branker's NYCHRL claims, albeit with leave to replead. *Gray v. Shearson Lehman Bros., Inc.,* 947 F.Supp. 132, 137 (S.D.N.Y.1996) (dismissing NYCHRL claims for failure to serve); *Chi v. Age Group, Ltd.,* No. 94 Civ. 5253, 1996 WL 627580, at *4 (S.D.N.Y. Oct. 29, 1996); *Cheung v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 913 F.Supp. 248, 253 (S.D.N.Y.1996) (dismissal for failure to serve, with leave to replead). In this instance, however, Branker's claims under the NYCHRL are further barred by her execution of a valid release, as discussed below. Leave to replead therefore cannot be granted.

■ Branker's claim under the NYSHRL is not administratively barred, because that statute contains no requirement of exhaustion of administrative remedies. A complainant seeking remedies under the NYSHRL may file suit in "any court of appropriate jurisdiction," so long as the complainant has not filed a complaint before the New York Commission on Human Rights or New York State Division on Human Rights. N.Y. Exec. Law, § 297(9) (McKinney's 1993).[2]

*Claims under NYCHRL, NYSHRL and tort claim are Barred by Branker's Knowing and Voluntary Signature on a Valid Release*

■ Branker's signature of a release on June 8, 1995 was knowing and voluntary

---

**1.** Because grant of summary judgment is based on the first two grounds, failure to exhaust and execution of a valid release, Pfizer's other contentions will not be considered.

**2.** Section 297(9) states:
Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a

cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter ...

under the totality of the circumstances test established by the Second Circuit, and therefore bars her action under the NYCHRL, NYSHRL and her claim for intentional infliction of emotional distress. An evaluation of whether the execution of a release was knowing and voluntary involves the following nonexhaustive list of factors:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law ... [ (7) ] whether [the] employer encourages or discourages and employee['s consultation with] an attorney, and [ (8) ] whether the employee had a fair opportunity to do so.

*Bormann v. AT & T Communications Inc.*, 875 F.2d 399, 402 (2d Cir.1989); *Julian v. New York City Transit Authority*, 857 F.Supp. 242, 248 (E.D.N.Y.1994), *aff'd mem.*, 52 F.3d 312 (2d Cir.1995) (discrimination claims dismissed where release was clear, employee was represented by attorney and employee received additional consideration); *Evans v. Waldorf-Astoria Corp.*, 827 F.Supp. 911, 913 (E.D.N.Y.1993), *aff'd*, 33 F.3d 49 (2d Cir.1994) (employer granted summary judgment where "undisputed facts ... point clearly to plaintiff's knowing waiver of her right to sue"); *Fay v. Petersen Publishing Co.*, 53 Empl. Prac. Dec. (CCH) ¶ 39,992, 1990 WL 67397 (S.D.N.Y. May 17, 1990) (age discrimination claim dismissed where no deadline set for plaintiff to sign release, plaintiff demanded and received extra consideration, language was unambiguous and plaintiff consulted attorney, although it was unclear whether defendant encouraged plaintiff to do so).

■ The balance of the factors set forth by the Second Circuit support the validity of the release. Branker is an educated and sophisticated woman, with experience in reviewing legal language derived from her employment as a secretary at a law firm prior to working at Pfizer, and her involvement in two earlier lawsuits, one in which she was a litigant *pro se* and obtained a refund of her security deposit, another, still pending, in which she applied for a patent. Branker had possession of the release form for forty-five days, from April 24 to June 8, 1995. This period appears to be sufficient for her to have read and digested its contents, consulted advisors and obtained counsel, particularly because the release is written in clear, understandable language. The first paragraph of the release states:

> In consideration of and in exchange for the agreement of Pfizer Inc. (Pfizer) to pay me the equivalent of an additional *two week's pay* and for other good and valuable consideration, the receipt of which is hereby acknowledged, I ... agree to release and forever discharge Pfizer ... from any and all claims that I may have ... This includes, without limitation, any facts or circumstances arising out of or in any way connected with or relating to my employment or its termination, including but not limited to ... violation of the Civil Rights Act of 1966, as amended, the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, as amended, the Americans with Disabilities Act of 1990, or any other federal, state or municipal statute, ordinance or the common law relating to employment or employment discrimination ... and I expressly waive any and all remedies that may be available thereunder.

A woman of Branker's experience and education would understand from this language that she was waiving state law employment discrimination claims such as those brought under the NYSHRL. Branker consulted with an attorney during the period before signing the release, which she was advised to do by Stephens, the Personnel Director. Finally, Branker received consideration in exchange for the waiver above the employee benefits to which she was already entitled, in the amount of an additional $36,091.14 in her severance package. Because Branker had no input in determining the terms of the release, the third factor does not support validity.

However, in light of the balance of the other factors to be considered, lack of input alone cannot support invalidating the release.

■ Branker asserts that she was fraudulently induced to sign the release, because the release did not provide information required by the Older Worker's Benefit Protection Act, 29 U.S.C. § 626(f) ("OWBPA"). The OWBPA was enacted in 1990 as an amendment to the ADEA. It provides minimum conditions under which a waiver of rights under the ADEA will be considered knowing and voluntary, including the condition that:

> if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the [mandated period for the employee to consider the waiver]) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and (ii) the job titles and ages of all individuals eligible or selected for the program and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1)(H). Branker contends that Pfizer did not provide the written information required by the OWBPA, termed by Pfizer as "Attachment A", until after she signed the release. Pfizer denies this contention, but bases its denial merely on the fact that language of the release states that the signor has reviewed Attachment A before signing. Pfizer offers no affidavant who can attest that the Attachment was offered in a timely manner. Branker further contends that Attachment A was not "calculated to be understood by the average individual", as required by § 626(f)(1)(H), because it failed meaningfully to inform Branker of the ages or departments of the individuals who were not given the separation program.[3]

If Branker's ADEA claims were intact, Pfizer's noncompliance with the minimum requirements of the OWBPA would invalidate a release of those claims.[4] *See* 29 U.S.C. § 626(f)(1) ("a waiver may not be considered knowing and voluntary unless at a minimum" it complies with the conditions set forth in (1)(A) through (H)); *EEOC v. Sara Lee Corp,* W.D. Mich. 923 F.Supp. 994, 1000 (W.D.Mich.1995) (waiver lacking information required by § 626(f)(1)(H) will not constitute defense to ADEA action); *Dane v. Doe Run Co.,* 865 F.Supp. 581, 585 (E.D.Mo.1994) (waiver invalid where defendants did not provide written information required by § 626(f)(1)(H)). But failure to comply with the OWBPA cannot invalidate release of Branker' s claims under the NYCHRL or NYSHRL, since the provisions of the OWBPA apply only to the ADEA and not to state law claims. Therefore the release remains effective as to the NYCHRL and NYSHRL claims, as well as the claim of intentional infliction of emotional distress. Branker offers no other ground for the invalidity of the release.

---

**3.** Upon review, it appears that Branker is correct regarding Attachment A's noncompliance with the plain meaning requirement of the OWBPA. It is comprised of four paragraphs. The first paragraph lists the work units from which unenumerated, unspecified individuals will receive the separation package. The second paragraph lists the job titles of these individuals. Job titles are not matched with work units, nor are the number of terminees in each work unit indicated. The third paragraph lists the ages of those individuals as: "31, 33, 34, 35, 37, 38, 42, 44, 45, 47, 48, 53, 54, 56, and 61." The final paragraph states: "The ages of individuals not given the separation program are ages 23 through 67, excluding ages 40, 50, 55, 59, 60, 63, 64, 66." This final paragraph obscures the required information regarding "the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H). Branker could not derive the ages of those not included in the separation package, nor could she tell whether those not included in the separation package were in the "same job classification or organizational unit" as those who were included in the program.

**4.** The release also failed to provide written advice that the signor should consult with an attorney prior to executing the agreement, as required by 29 U.S.C. § 626(f)(1)(E).

*Conclusion*

For the reasons set forth above, Pfizer's motion for summary judgment is granted.

It is so ordered.