Frances CULLY, Plaintiff,

v.

**MILLIMAN & ROBERTSON, INC., Defendant.**

**No. 97 Civ. 4346 CBM.**

United States District Court, S.D. New York.

Sept. 22, 1998.

Michael G. O'Neill, for Plaintiff.

Jackson, Lewis, Schnitzler & Krupman by Clifford R. Atlas, Kevin G. Lauri, New York City, for Defendant.

## OPINION

MOTLEY, District Judge.

Plaintiff Frances Cully sued her former employer, defendant Milliman & Robertson, Inc., alleging racial harassment and racially-motivated discharge in violation of the New York Human Rights Law, *N.Y.Exec.L.* § 290 *et seq.*, and the New York City Human Rights Ordinance, *N.Y. City Admin.Code* § 8–101 *et seq.* Defendant has moved for summary judgment, arguing that plaintiff has failed to provide evidence of discriminatory motive, failed to support her hostile environment claim, and failed to satisfy City law prerequisites. For the below reasons, defendant's motion is denied.

## I. BACKGROUND

Defendant Milliman & Robertson, Inc. ("M & R") is an actuarial and consulting firm with an office in New York City but based and incorporated in the State of Washington. *See* Joint Pretrial Order, 1. On September 19, 1994, M & R hired plaintiff Francis Cully, a white female living in New York, as a secretary. *See id.* at 5. Hiring and supervising plaintiff at M & R were three men, two white and one black: David Appel (white), Philip Borba (white), and William White (black). *See id.* Initially, plaintiff was one of five female secretaries assigned to a common work area (the "pool"). *See id.* Plaintiff eventually complained of problems with the other secretaries in the pool; in response, M & R moved plaintiff to a semi-private cubicle. *See id.* On June 7, 1996, M & R terminated plaintiff's employment. *See id.* When terminated, plaintiff earned $35,-700 annually plus benefits. *See id.*

Plaintiff claims the following. Soon after she started at M & R, the four other secretaries in the pool, all nonwhite, began to harass her based on her race. *See id.* at 6. The harassment included derogatory racial comments, sabotaging of plaintiff's work, veiled threats, and general hostility. *See id.*; Pl.'s Depo., 203–214. Plaintiff complained to Mr. Borba of the harassment, *see* Pl.'s Mem. Law Opp'n Def.'s Mot.Summ.J., 3–4, which had become common knowledge at the office. *See* Joint Pretrial Order, 6. In response, M & R moved plaintiff to the semi-private cubicle, but that failed to stop the harassment because plaintiff still had to interact with the pool secretaries. *See id.*

Plaintiff also alleges discriminatory treatment and discharge by Mr. White, her one black supervisor. Mr. White, who had a close relationship with one of the pool secretaries harassing plaintiff, tolerated the harassment. *See id.* at 7. As the harassment increased, he became abusive and hypercritical in dealings with plaintiff. *See id.* Plaintiff's work otherwise received good reviews: she earned a merit raise in January 1996; no pre-termination records criticized her; and she drew compliments from Mr. Appel in May or June 1996. *See id.* at 8. Plaintiff's discharge occurred in a meeting with Mr. White, Mr. Appel, and Natalie Senko, the office manager, in which only Mr. White criticized her performance. *See id.* The termination traces, in whole or in part, either to Mr. White's racial hostility, the pool secretaries' racial hostility, or a desire to retaliate against plaintiff's complaints about the pool. *See id.* at 8–9.

Defendant, in contrast, claims the following version of events. None of plaintiff's supervisors knew of any racial element in plaintiff's complaints about the pool; plaintiff simply reported that the pool was too loud for her to work. *See id.* at 10–11. M & R promptly responded to plaintiff's expressed

concerns by moving her away from the problem site. *See id.* at 11.

Defendant also alleges that plaintiff's work was inadequate. Assigned to work roughly equally for all three supervisors, plaintiff devoted disproportionate attention to Mr. Appel and Mr. Borba, especially Mr. Appel. *See id.* Consequently, Mr. Borba and Mr. White often had to perform their own secretarial work. *See id.* All three supervisors agreed that plaintiff "was incapable of performing the basic responsibilities of her position," *see* Def's Mem.Law Support Mot. Summ.J., 7. All three spoke with plaintiff about her poor performance and eventually agreed to discharge her; race was not a factor. *See* Joint Pretrial Order, 11.

Defendant further challenges plaintiff's claimed losses, arguing that she suffered no injury and failed to use reasonable efforts to mitigate her damages until finding the better-paying job she holds today. *See id.* at 12. Plaintiff claims injury and, while admitting. that she was unemployed for ten months and then employed only part-time for another ten, asserts that she made reasonable mitigation efforts that resulted in her current job. *See id.* at 6.

The parties also interpret M & R's hiring history for plaintiff's position differently. Plaintiff replaced a non-white secretary and was replaced by a non-white secretary, who in turn was replaced by a white secretary. *See id.* at 5, 12. Defendant cites its hiring of white secretaries as evidence that it bore no racial animus against whites. Plaintiff counters that the later white secretary only came on board once Mr. White left and M & R terminated plaintiff's non-white replacement; this plaintiff sees as evidence of race-based hiring decisions at M & R.

## II. CONCLUSIONS OF LAW

### A. Summary Judgment Standards

The basic rule in applying Fed.R.Civ.P. 56 is that "[u]ncertainty as to the true state of any material fact defeats [a summary judgment] motion." *Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir.1989). The non-moving party's burden is to produce concrete evidence sufficient to establish a genuine unresolved material issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988). The court then must view the facts in the light most favorable to .the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). The court neither weighs the evidence nor resolves material factual issues, but only determines whether, after adequate discovery, any such issues remain unresolved because a reasonable fact finder could decide for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson,* 892 F.2d at 1132.

In discrimination cases, summary judgment for defendant is appropriate only if "the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995). Because the issue of the employer's hidden intent is so salient, the Second Circuit has emphasized that trial courts must be especially chary about disposing of claims on summary judgment. *See, e.g., Gallo,* 22 F.3d at 1224; *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 103 (2d Cir.1989). "Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant depositions, affidavits and materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination." *Chertkova v. Conn. Gen'l Life Ins. Co.,* 92 F.3d 81, 87 (2d Cir.1996); *see also Chambers v.. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). This does not mean that plaintiff's summary judgment burden is lower in discrimination cases. It just reflects the reality that discrimination cases are often the sort in which, because they turn on murky issues of intent and inference, plaintiffs need witness

testimony and full argument to meet their burdens of proof.

## B. Discriminatory Discharge Claim

In claims of discriminatory discharge, courts traditionally apply the familiar three-step burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–57, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), as recently clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505–512, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and *Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir.1997) (*en banc*). These standards apply equally to federal, New York State, and New York City law claims. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995).

■ For a basic prima facie case of discriminatory discharge, plaintiff must prove by a preponderance of the evidence: (1) membership in a protected class, (2) satisfactory performance of job duties, (3) discharge from the job, and (4) discharge occurring in circumstances giving rise to an inference of discrimination. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (citations omitted). Once plaintiff has established his prima facie case of discrimination based on race, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817); *see also St. Mary's*, 509 U.S. at 507, 113 S.Ct. 2742 (defendant "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action" (quoting *Burdine*, 450 U.S. at 254–255 and n. 8, 101 S.Ct. 1089)).

■ Once defendant carries its burden of production, the *McDonnell Douglas* framework "simply drops out of the picture," *St. Mary's*, 509 U.S. at 510–11, 113 S.Ct. 2742, and "the presumption of discrimination that was raised upon a showing of the prima facie case no longer operates." *Fisher*, 114 F.3d at 1336. At this stage, plaintiff must have an opportunity to meet his burden of persuading the fact finder that the reasons articulated for the adverse decision were a pretext for discrimination and that the real reason was race or sex or age as the case might be. *See St. Mary's*, 509 U.S. at 507–08, 113 S.Ct. 2742; *Burdine*, 450 U.S. at 256–57, 101 S.Ct. 1089; *Fisher*, 114 F.3d 1332.

### 1. "Reverse Discrimination" Standards

■ Defendant argues that in "reverse discrimination" cases such as plaintiff's claim of discrimination by blacks against whites, plaintiff's prima facie burden is higher. Some courts have argued that "a slightly altered analysis" applies to reverse discrimination claims, *Olenick v. New York Tel.*, 881 F.Supp. 113 (S.D.N.Y.1995), because "it defies common sense to suggest that the promotion of a black employee justifies an inference of prejudice against white co-workers in our present society," *id.* (quoting *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C.Cir.1981)).

The specific dispute here is whether the replacement of plaintiff with a non-white applicant is sufficient for the prima facie showing of "circumstances giving rise to an inference of discrimination." In the basic prima facie case, that is enough to shift the burden to defendant to offer a nondiscriminatory reason. This court rejects defendant's argument that plaintiff must prove something more here.

The leading Supreme Court cases on reverse discrimination cut against defendant's argument for different legal standards. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), establishes that Title VII "proscribe[s] racial discrimination ... against whites on the same terms as racial discrimination against nonwhites." *Id.* In the Second Circuit, district courts disagree as to whether *Olenick* is appropriate or consistent with *McDonald*. Compare, e.g., *Umansky v. Masterpiece Int'l Ltd.*, 1998 WL 433779, No. 93 Civ. 2367(AGS) (S.D.N.Y. July 31, 1998) (applying *Olenick*) *with Cunliffe v. Sikorsky Aircraft Corp.*, 9 F.Supp.2d 125 (D.Conn.1998) (reject-

ing *Olenick*). Outside the circuit, there is similar disagreement. *Compare, e.g., Parker,* 652 F.2d 1012 (D.C.Cir.1981) (higher prima facie burden for reverse discrimination plaintiffs) *with Lucas v. Dole,* 835 F.2d 532 (4th Cir.1987) (no higher prima facie burden). But perhaps more important than the discussions in these few cases is the glaring silence of the Second Circuit. Absent binding authority to the contrary, this court must assume that *McDonald* means what it says: a Title VII case is a Title VII case on the "same terms" for plaintiffs of all races.

Ultimately, there may be little real disagreement among courts on this point. It typically is enough for a plaintiff to show satisfactory performance and replacement with someone of another race, but not always. For example, if plaintiff were a white farmhand replaced by the only black farmhand in the county, plaintiff would need to show more than that fact to make out a prima facie case. But in a majority-nonwhite office in a majority-nonwhite city in an increasingly diverse country, it is not clear that whites are a majority that we should doubt face racial discrimination. Discrimination against nonwhites undoubtedly is the greater problem in the region and the country; but in any particular social pocket, the tables may turn, leaving it unclear which discrimination direction is the "reverse."

■ To the extent that circumstances look less suspicious in reverse discrimination claims, plaintiffs may have a tougher time making the sort of factual showing necessary to establish pretext. But the prima facie burden is low because all the prima facie showing does is force defendant to offer an explanation; the "inference" a prima facie case creates, even if not then disproved by defendant, may still not be sufficient for a finding of discrimination. *See Fisher,* 114 F.3d 1332 (reversing finding in favor of a plaintiff who met her prima facie burden and disproved defendant's explanations).

The lurking problem here is the decline of the formal *McDonnell Douglas* framework. All races now are "protected classes," so in a fired employee's suit, dispute only exists on the second and fourth issues: satisfactory performance of job duties and circumstances giving rise to an inference of discrimination. Of course, this is the ultimate question in any discrimination case: can we infer discrimination or was plaintiff fired for unsatisfactory performance? The prima facie formulation not only fails to focus the inquiry, but also has little remaining legal significance now that, under *Fisher,* "the term 'prima facie case,' for purposes of employment discrimination cases only, has been given a new meaning of some sort." *Bickerstaff v. Vassar College,* 992 F.Supp. 372, 373 (S.D.N.Y. 1998). Specifically, *Fisher* introduces "a novel concept—the insufficient prima facie case[,] ... a collection of facts that always suffices to pry an explanation out of a defendant ... and only sometimes suffices to permit a jury to infer discrimination." *Fisher,* 114 F.3d at 1366 (Newman, C.J., dissenting).

In sum, it is becoming increasingly apparent that discrimination cases would progress more sensibly without "the much criticized yo-yo rule about the shifting burden of persuasion" and peculiar definition of prima facie case that "can only bring confusion to our craft." *Bickerstaff,* 992 F.Supp. at 374; *see also* Kenneth R. Davis, *The Stumbling Three–Step, Burden–Shifting Approach in Employment Discrimination Cases,* 61 Brook.L.Rev. 703 (1995) ("calling for the abandonment of *McDonnell Douglas* ... [and that] courts apply to all disparate-treatment cases the practices customary in civil cases and replace the *McDonnell Douglas* scheme with the motivating-factor test of the 1991 Act, which merely requires a plaintiff alleging disparate treatment to prove that discriminatory intent played a part," *id.* at 709). Davis notes that aside from causing "endless confusion," *id.* at 705, application of *McDonnell Douglas* often results in bad law because "the requirements of a prima facie case, under many circumstances, violate the 1991 amendment to Title VII." *Id.* at 744. Specifically, plaintiffs who cannot prove themselves "qualified" or their performance "satisfactory" face dismissal because they cannot prove a prima facie, but under the 1991 Act nevertheless should win declaratory relief and attorney's fees if they can prove that race or sex was a "motivating factor." *Id.* at 744–52. Given the additional muddi-

ness as to the "circumstances" issue in reverse discrimination cases, it is clear that "attempting to cram a reverse discrimination case into the *McDonnell Douglas* framework is not a reasonable approach." *Eastridge v. Rhode Island College,* 996 F.Supp. 161 (D.R.I.1998).

### 2. Plaintiff's Showing

■ Plaintiff has presented sufficient evidence of satisfactory performance to survive summary judgment. Over her roughly 20 months at M & R, plaintiff presents evidence of praise from Mr. Appel, her highest-ranking supervisor, and of a raise that a reasonable fact finder could interpret as a merit raise. While plaintiff's ultimate burden may entail persuasive proof that she performed well enough to call her firing into question and that her race was the real reason, she has met her lower burden at this stage. Plaintiff has offered enough to warrant an explanation from defendant and to allow a jury to believe her characterization of her performance over defendant's and that her race was the real reason for her assignment to a different area of defendant's work place.

■ Plaintiff also has presented sufficient evidence of circumstances giving rise to an inference of racial discrimination. Plaintiff is white and was replaced by a black applicant after, she claims, facing harsh treatment from a black supervisor after she reported rampant racial harassment by black co-workers. A reasonable jury could believe defendant's challenges to those claims and arguments that circumstances were not otherwise "suspicious," especially when plaintiff's replacement was replaced by a white secretary. At this stage, however, defendant cannot remove these disputed facts and inferences from the realm of reasonable disagreement. Because these material issues remain, summary judgment is inappropriate.

### C. Racial Harassment Claim

Plaintiff's complaint also alleges a hostile environment consisting of *racial* harassment. *See* Compl. ¶¶ 19, 22. Defendant seeks summary judgment as to that claim on three grounds. First, defendant alleges that the alleged mistreatment did not rise to the level of racial harassment. Second, defendant claims that it reasonably responded to plaintiff's complaints about the office environment by transferring her work station. Third, defendant argues that plaintiff has defaulted by failing to support her racial harassment claim in her summary judgment motion. This court rejects all three of defendant's grounds.

### 1. Presence of a Hostile Racial Environment

■ First, the mistreatment by the black secretaries that plaintiff alleges is sufficient to qualify as a hostile racial environment. The basic rule is that harassment violates employment discrimination statutes if impermissibly motivated and sufficiently "severe or pervasive ... [to] alter the conditions of ... employment and create an abusive working environment." *Faragher v. City of Boca Raton,* — U.S. —, —, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); *see also Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1189 (2d Cir. 1987) (holding in a racial harassment case that the incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive"). Standards are the same for racial and sexual harassment. *See Faragher,* — U.S. at — – —, 118 S.Ct. at 2283–84; *Carrero v. New York City Hous. Auth.,* 890 F.2d 569, 577 (2d Cir.1989) (applying *Lopez* to sexual harassment).

The incidents alleged were frequent, and often explicitly racial, *see* Joint Pretrial Order, 6, enough to qualify as "pervasive" racial harassment. Coupled with uncooperativeness and threats from co-workers that plaintiff regularly encountered, the claim is not of "a few isolated incidents of racial enmity," *Schwapp v. Town of Avon,* 118 F.3d 106, 110–11 (2d Cir.1997), but of an environment of constant hostility.

■ The alleged incidents also are sufficiently "offensive" to qualify as harassment. The applicable standard is an objective and subjective test that both the victim and a reasonable person must perceive hostility or abusiveness based on "all the circumstances,"

including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, —— U.S. at ——, 118 S.Ct. at 2283 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *see also Kotcher v. Rosa & Sullivan Appliance Center, Inc.*, 957 F.2d 59 (2d Cir.1992). For purposes of surviving summary judgment, plaintiff's claims as to the impact on her mental state and ability to perform her job show she perceived her treatment as offensive and threatening; and her reaction does not seem such a disproportionate response to pervasive harassment as to render plaintiff a non-reasonable person whose claims fail the subjective test.

### 2. Defendant's Duty to Remedy Harassment

█ Second, defendant's response to plaintiff's complaints was not so clearly adequate as to merit summary judgment. Defendant's denial of knowledge of the racial nature of plaintiff's complaints could be a defense at trial. Yet plaintiff's allegations that the racial nature of the harassment was common knowledge are plausible enough for a jury to believe. If a jury does believe them, then defendant was not innocently unaware of the harassment.

The efforts defendant made to remedy the situation by moving plaintiff may prove sufficient to defeat liability. But the sufficiency of a remedial measure that did not include even a cursory chat with the alleged harassers is far from clear. Especially under *Faragher*, the liability of employers receiving harassment complaints turns to a large degree on whether they make efforts to stop the harassment. *See Faragher*, 118 S.Ct. at 2284 (collecting "myriad cases in which District Courts and Courts of Appeals have held employers liable on account of actual knowledge by the employer, or high-echelon officials of an employer organization, of sufficiently harassing action by subordinates, which the employer or its informed officers have done nothing to stop").

### 3. Plaintiff's Duty to Respond to Defendant's Memorandum

█ Third, plaintiff has not failed to support her harassment claim to the point of default. While plaintiff's summary judgment brief barely addressed the harassment claim, in its fact section it did recount the facts on which the claim rests. *See* Pl.'s Mem.Law Opp'n Def.'s Mot.Summ.J., 3–4. In its law section it did argue that the secretaries' treatment of plaintiff was racially discriminatory. *See id.* at 14 ("The race based comments of the other secretaries in the pool easily support a finding that their hostility toward the plaintiff was based on her race."); *id.* at 16 ("Ultimately, what plaintiff has shown is nothing less than an absolute correlation between the race of her co-workers and supervisors and how she was treated. The other secretaries . . ., all of whom were African Americans or some form of non-White minorities, were all hostile and abusive of the plaintiff.").

Far more of plaintiff's memorandum discusses the motivations and actions of the three supervisors than discusses the harassment claim in particular. But this may be appropriate given the increasing focus of harassment law on defendants' awareness of and efforts to remedy claimed harassment. *See, e.g., Faragher*, —— U.S. at ——, 118 S.Ct. at 2279 (holding that "an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of a plaintiff victim"). At worst, plaintiff may have gambled by failing to respond to specific legal arguments defendant made in its memorandum. That does not amount to "[w]illful failure to comply with" the local rule requiring that opposition to a motion "shall be supported by a memorandum of law." Local Civil Rule 7.1.

### D. Plaintiff's Non–Compliance with City Law Requirements

█ Defendant argues that this court must dismiss plaintiff's City law claim because plaintiff has failed to comply with a statutory requirement: "Prior to commencing an action pursuant to subdivision a of this

section, the plaintiff shall serve a copy of the complaint upon the city commission on human rights and the corporation counsel." N.Y. *City Admin.Code* § 8–502(c). It is not clear that such a failure warrants dismissal, however. The legal question is whether that statutory requirement establishes a condition precedent to a valid lawsuit under City law. This court finds that it does not.

The clear weight of authority in New York courts is that the § 8–502(c) requirement of notice to the City is not a condition precedent to a valid suit. Though the New York Court of Appeals has not ruled on the issue, the First and Second Departments have so held. *See Bernstein v.1995 Assocs.*, 217 A.D.2d 512, 630 N.Y.S.2d 68 (1st Dept.1995) (analyzing § 8–502(c) and following analogous rulings as to state law); *Teller v. Am. West Airlines*, 240 A.D.2d 727, 659 N.Y.S.2d 314 (2d Dept. 1997) (following *Bernstein*). *Bernstein* rejected a lower court ruling that § 8–502(c) created a condition precedent because the statute contains "no express language ... to that effect, as is found in various other statut[es]." 630 N.Y.S.2d at 71.

*Bernstein* has drawn support from most federal district courts in the Second Circuit that have addressed the issue. *See Harrison v. Indosuez*, 6 F.Supp.2d 224 (S.D.N.Y.1998); *Naftchi v. N.Y. Univ.*, 14 F.Supp.2d 473 (S.D.N.Y.1998); *Duffy v. Drake Beam Morin, Harcourt Gen'l, Inc.*, 1998 WL 252063, No. 96 Civ. 5606(MBM) (S.D.N.Y. May 19, 1998); *Westphal v. Catch Ball Prods. Corp.*, 953 F.Supp. 475 (S.D.N.Y.1997); *Lightfoot v. Union Carbide Corp.*, 1997 WL 752357, No. 92 Civ. 6411(HB) (S.D.N.Y. Dec. 2, 1997); *Wills v. Key Food Stores Co–operative, Inc.*, 1997 WL 168590, No. 95 Civ. 5333(SJ) (E.D.N.Y. April 9, 1997); *Kim v. Dial Serv. Int'l, Inc.*, 1997 WL 5902, No. 96 Civ. 3327(DLC) (S.D.N.Y. Jan. 8, 1997); *Abdullajeva v. Club Quarters, Inc.*, 1996 WL 497029, No. 96 Civ. 0383(LMM) (S.D.N.Y. Sep. 3, 1996); *Luongo v. Nationwide Mut. Ins. Co.*, 1996 WL 445365, No. 95 Civ. 3190(MBM) (S.D.N.Y. Aug. 7, 1996). *But see Branker v. Pfizer, Inc.*, 981 F.Supp. 862 (S.D.N.Y.1997); *Gray v. Shearson Lehman Bros., Inc.*, 947 F.Supp. 132 (S.D.N.Y.1996); *Cheung v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 913 F.Supp. 248 (S.D.N.Y.1996); *Chi v. Age Group, Ltd.*, 1996 WL 627580, No. 94 Civ. 5253(AGS) (Oct. 29, 1996); *Walsh v. Lincoln Sav. Bank, FSB*, 1995 WL 66639, No. 93 Civ. 1101(LLS) (S.D.N.Y. Feb. 17, 1995); *Paladines v. Poulos*, 1994 WL 389022, No. 93 Civ. 9031(LMM) (S.D.N.Y. July 28, 1994); *Lightfoot v. Union Carbide Corp.*, 1994 WL 184670, No. 92 Civ. 6411(RPP) (S.D.N.Y. May 12, 1994).

This court follows the Southern District majority adhering to *Bernstein* for three reasons. First, *Bernstein* is persuasive in its observation that the statutory language of § 8–502(c) differs from the typical sort of language for creating conditions precedent. *See* 630 N.Y.S.2d at 71–72. Second, whatever the persuasiveness of state case law, federal courts must discern and follow it the best they can. *Westphal* noted, even before *Teller* added Second Department support to *Bernstein*, that "[a]bsent compelling indications that *Bernstein* would not be followed by the New York Court of Appeals, and there are none, this court is obliged to give it great weight in determining the law of New York." 953 F.Supp. at 481. Third, many of the Southern District cases ruling that § 8–502(c) creates a condition precedent have proven inaccurate predictors of New York law because they predated contrary state rulings in *Bernstein* (July 27, 1995) and *Teller* (June 30, 1997), *see, e.g.*, *Walsh*, 1995 WL 66639 (Feb. 17, 1995); *Paladines*, 1994 WL 389022 (1994); *Lightfoot*, 1994 WL 184670 (1994), or at least predated *Teller*, *see, e.g.*, *Gray*, 947 F.Supp. 132 (1996); *Cheung*, 913 F.Supp. 248 (1996); *Chi*, 1996 WL 627580 (1996).

## III. CONCLUSION

For the reasons discussed above, defendant's Fed.R.Civ.Proc. 56 motion for summary judgment against plaintiff is denied.